UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LATAVIOUS BEAL,

        Plaintiff,

                          Case No. 2:23-cv-252

v.

                          Hon. Hala Y. Jarbou

RAY VANALSTINE,

        Defendant.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues AMF Corrections Officer Ray Vanalstine in his official and personal capacity. (Compl., ECF No. 1, PageID.2.)

Plaintiff raises a First Amendment retaliation claim against Defendant Vanalstine. (*Id*., PageID.3.)[1] Plaintiff reports that, on September 5, 2023, Defendant Vanalstine wrote a Class II misconduct against Plaintiff for "destruction or misuse [of property]." (*Id.*; Misconduct Rep., ECF No. 1-1, PageID.9.) Plaintiff attaches the misconduct report to his complaint.[2] Defendant Vanalstine described the violation as follows:

> In the toilet of cell 2-112 that was solely occupied by prisoner Beal #327749 he claimed that the toilet in the cell was clogged. The cell inspection sheet shows that everything was in working order prior to his occupation of the cell. A maintenance worker came to repair the issue and found a state issue segregation shoe lodged in the toilet. At no point in time did prisoner Beal have staff authorization to flush a shoe down the toilet. Beal identified by cell door card and Housing Unit 2 Master Count Board.

(Misconduct Rep., ECF No. 1-1, PageID.9.) Non-party Lieutenant Haapala served as the hearing officer for the misconduct hearing. The lieutenant's report does not indicate that Plaintiff even made a statement at the September 13, 2023, hearing. Instead, Lieutenant Haapala dismissed the charge "due to charge not being correct." (Misconduct Hr'g Rep., ECF No. 1-1, PageID.8.)

---

[1] All of Plaintiff's factual allegations appear on page 3 of the complaint.

[2] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint.

The MDOC policy directive regarding prisoner discipline describes a "destruction or use of property" violation as "[a]ny destruction, removal, alteration, tampering, or other unauthorized use of property; unauthorized possession of a component part of an item." MDOC Policy Directive 03.03.105, Attachment B (eff. Apr. 18, 2022). The MDOC offers as common examples of such a violation:

> Tampering with locking device; use of a door plug; destruction of property belonging to another person; unauthorized use of a telephone or using another prisoner's Personal Identification Number (PIN) to make a telephone call; possession of television or tape player parts.

*Id*. Putting a shoe down a toilet does not appear to fit squarely into the MDOC description or examples.[3]

A week after the dismissal, Plaintiff gave Defendant Vanalstine a copy of the hearing report. By the end of Vanalstine's shift, Vanalstine told Plaintiff that he would not feed Plaintiff breakfast the next day "since [Vanalstine] knew that misconduct got dismissed." (Compl., ECF No. 1, PageID.3.)

The next day, as Defendant Vanalstine passed out breakfast, he addressed Plaintiff using a racial slur and asked "why you standing at the door, I told you yesterday I'm not feeding you shit boy since Lieutenant Haapala dismissed that misconduct bitch." (*Id.*)

Later that day, Defendant Vanalstine wrote a new destruction or misuse of property misconduct report. Vanalstine described the violation as follows:

> In cell 2-113 that was solely occupied by prisoner Beal #327749 He showed me the wall outlet cover. He told me "I removed this from the wall what the fuck are you going to do now you stupid white mother fucker". The cell inspection sheet shows

---

[3] Reviewing the various possible misconduct violations, perhaps the more appropriate violation would have been a Class III "health, safety, or fire hazard" violation, which is described as "[c]reating a health, safety, or fire hazard by act or omission." MDOC Policy Directive 03.03.105, Attachment B (eff. Apr. 18, 2022). The examples of this violation include "[d]irty cell; lack of personal hygiene." *Id*.

that everything was in working order prior to his occupation of the cell. At no point in time did prisoner Beal have staff authorization to take the outlet cover off the wall. Beal identified by cell door card and Housing Unit 2 Marster Count Board.

(Misconduct Rep., ECF No. 1-1, PageID.7.)

Plaintiff indicates that non-party Lieutenant Pynnonen found Plaintiff guilty of that misconduct on September 27, 2023. A few days later, Defendant Vanalstine told Plaintiff that Vanalstine paid Pynnonen lunch fees for three days to find Plaintiff guilty.

Plaintiff filed a grievance against Defendant Vanalstine on September 29, 2023, complaining that Vanalstine had refused to feed Plaintiff breakfast on September 21 because Lieutenant Haapala had dismissed the misconduct. (Grievance AMF 2310-1227279, ECF No. 1-1, PageID.10–12.) It appears that Plaintiff pursued the grievance through all three steps of the administrative grievance process. (*Id.*) Plaintiff does not indicate that he filed a grievance against Defendant Vanalstine related to the second misconduct or the reported bribe.

Plaintiff seeks damages in the amount of $2,000 in "exempt funds" and the waiver of his filing fees. (Compl., ECF No. 1, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Sovereign Immunity

Plaintiff sues Defendant Vanalstine in his individual and official capacity. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984);

*Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks only monetary damages in this action. (*See* Compl., ECF No. 1, PageID.4.) An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, the Court dismisses Plaintiff's claim for monetary relief against Defendant Vanalstine in his official capacity.

### B.  First Amendment Retaliation

In this action, Plaintiff indicates he is raising only one claim: First Amendment retaliation. (Compl., ECF No. 1, PageID.3.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d

6

1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's claim fails at the very first step. As an initial matter, Plaintiff does not allege any protected conduct—at least not any protected conduct that preceded Defendant Vanalstine's allegedly unconstitutional actions. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff alleges that he filed a grievance. But he filed the grievance on September 29, 2023, after Vanalstine had already written the first misconduct, denied Plaintiff breakfast, and written the second misconduct. Moreover, Plaintiff wrote the grievance after Lieutenant Pynnonen had found Plaintiff guilty of the second misconduct. There are no facts alleged in Plaintiff's complaint from which the Court might infer that Plaintiff's grievance served as the foundation for Defendant's purportedly retaliatory actions.

Other than the grievance, Plaintiff does not allege that he said anything, and he does not specifically identify anything he said or did as protected conduct. Accordingly, rather than working forward from Plaintiff's identified protected conduct, the Court will work back from Plaintiff's allegations of possible adverse actions and his allegations regarding the motivations for those actions.

It is not possible to infer any protected conduct that might have motivated the first misconduct report. Indeed, the very first fact alleged—the first stated in the fact section of the complaint and the first event in Plaintiff's chronological narrative—is that Defendant Vanalstine wrote the first misconduct report. Therefore, as to the issuance of the first misconduct charge by Defendant Vanalstine, the Court cannot infer any motivating protected conduct.

Refusing to feed Plaintiff breakfast on September 21, 2023, is the next identified adverse action. Plaintiff identifies the motivation for that adverse action several times:

"I'm not feeding you breakfast since I know that misconduct got dismissed" (Compl., ECF No. 1, PageID.3 (grammar in original));

"[Y]ou must forgot about that misconduct Lieutenant Haapala dismissed I ain't feeding you shit . . ." (Grievance, ECF No. 1-1, PageID.10 (grammar in original));

"Ray Vanalstine didn't feed me due to a dismissed misconduct by Lt. Haapala" (*Id.*, PageID.11); and

"Officer Ray Vanalstine never feed me because I was found dismissed by a Class 2 misconduct he wrote me" (*Id.* (grammar in original)).

Being found "not guilty" of a misconduct charge is not protected conduct. *See, e.g.*, *Taylor v. Fischer*, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012) (concluding that "[b]eing found not guilty [of a prison misconduct charge], however, is not protected activity, or for that matter, 'activity' at all, on plaintiff's part"); *Miller v. Lucas*, No. 3:16-cv-01947, 2018 WL 4441534, at *4 (M.D. Pa. July 20, 2018), *report and recommendation adopted*, No. 3:16-cv-1947, 2018 WL 4404675 (M.D. Pa. Sept. 17, 2018) (finding that "[b]eing found not guilty of a misconduct charge is not conduct protected by the First Amendment" (citations omitted)).

Moreover, there are not facts alleged to support the inference that the dismissal of the first misconduct was prompted by Plaintiff's exercise of First Amendment rights. To the contrary, based on the misconduct hearing report, it appears the misconduct was dismissed because Lieutenant Haapala concluded that Defendant Vanalstine had "overcharged" Plaintiff.

Although the Court does not accept as true the statements in either of Vanalstine's misconduct reports, there are no facts alleged by Plaintiff that would support the inference that the first misconduct report was false. Plaintiff does not claim the report was false nor does he claim that he did not commit the misconduct alleged. Moreover, there are no facts alleged in the complaint or set forth in the attached documents from which the Court might infer that Plaintiff

even spoke in his own defense at the misconduct hearing or, if he did, that Defendant Vanalstine was aware that Plaintiff spoke in his own defense, or that anything Plaintiff might have said in his own defense bore any relation to the determination that Vanalstine had pursued the wrong charge. Therefore, the Court concludes that there is no protected conduct that motivated Defendant's refusal to feed Plaintiff breakfast.

The next "adverse action" alleged by Plaintiff is Defendant Vanalstine's writing of the second misconduct report. Plaintiff does not allege that he said or did anything between the time Vanalstine denied Plaintiff breakfast and the time Vanalstine wrote the second misconduct report. Plaintiff does not allege that the second misconduct report was motivated by anything that Plaintiff said or did.

The only facts provided regarding Defendant Vanalstine's motivation in writing the second misconduct report is the misconduct described in the report—the insolent statements of Plaintiff to Vanalstine and the removal of the wall outlet cover. (Misconduct Report, ECF No. 1-1, PageID.7.) "[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that prisoner's statement that a hearing officer was "a foul and corrupted bitch" was insulting, derogatory, and questioned her authority as well as the integrity of the proceeding was insolent and violated an MDOC policy directive and, thus, could not  be protected conduct); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir.

2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Therefore, the misconduct described in the report is not protected conduct.

The Court does not accept as true Vanalstine's statements in the report; however, Plaintiff does not allege that the report was false nor does he claim that he did not commit the misconduct alleged. Plaintiff's factual allegations support only one other possible inference with regard to Vanalstine's motivation: that Vanalstine wrote the second misconduct for the same reason he denied Plaintiff breakfast. That reason—the dismissal of the first misconduct report—is not protected conduct.

The last possible "adverse action" was the reported lunch bribe of the hearing officer. Plaintiff does not allege that he said or did anything to motivate Vanalstine to either bribe the officer or report that he had bribed the officer. Plaintiff does not mention the event in his grievance or grievance appeals. Without any protected conduct identified as the motivating force for Vanalstine's behavior, the Court is left to infer that it was not motivated by protected conduct, but by the dismissal of the first misconduct or the misconduct described in the second misconduct report.

For these reasons, the Court concludes that Plaintiff has failed to state the only claim he identifies, a First Amendment retaliation claim.

### C.   Other possible claims

There is no indication that Plaintiff intended to raise any claim other than a First Amendment retaliation claim. The lenient reading of complaints required by *Haines v. Kerner*, 404 U.S. at 519, does not "abrogate basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Indeed, "hanging the legal hat on the correct peg is such a standard, and '[l]iberal construction does not require a court to conjure allegations on a litigant's behalf.'"

*Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F.App'x 579, 580 (6th Cir.2001)). As explained below, the Court does not see a "correct peg" that might permit Plaintiff's allegations to state a claim.

### 1.    Eighth Amendment

It is not impossible that a prisoner in Plaintiff's situation might claim that the potential or actual consequences of a finding of guilt on a Class I misconduct, the racial slurs, or being denied a meal rises to the level of cruel and unusual punishment under the Eighth Amendment. Such a claim would also lack merit.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### a.  Punishment for Misconduct

The possible sanctions for a Class II misconduct include one or more of the following:

A.  Toplock (confinement to quarters), not to exceed five days for all violations arising from a single incident.

B. Loss of privileges, not to exceed 30 days for all violations arising from a single incident.

C. Assignment of extra duty, not to exceed 40 hours for all violations arising from a single incident.

D. Restitution and/or disgorgement of funds/ill-gotten gains.

MDOC Policy Directive 03.03.105, Attachment D (eff. Apr. 18, 2022). The Class II misconduct sanctions differ from Class I misconduct sanctions in only one material respect: Class I misconduct sanctions include the more severe potential penalty of up to 10 days in punitive segregation for each violation (or up to 20 days in segregation for all violations arising from a single incident). *Id*.

Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable. Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff would be denied certain privileges as a result of placement in punitive segregation or the lesser restrictions to be served in general population, he does not allege or show that any disciplinary restrictions resulted in the denial of basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of placement in segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Certainly, then, the lesser denial of privileges that occurs when a prisoner is

permitted to serve his sanction in his cell rather than punitive segregation cannot establish an Eighth Amendment violation.

### b.        Denial of a Meal

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons."*Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that he missed one

breakfast falls short of stating a claim under the objective prong of the deliberate-indifference standard.

### c.      Verbal Harassment

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Defendant Vanalstine's alleged use of racial slurs, therefore, though repugnant, does not constitute an Eighth Amendment violation.

### 2.      Due Process Protection

### a.      Procedural Due Process

Plaintiff's allegation that Defendant Vanalstine told Plaintiff that he bribed Pynnonen to find Plaintiff guilty might be offered to support a claim that Vanalstine violated Plaintiff's

14

procedural due process rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff's Class II misconduct violation proceedings did not implicate a life or property interest. Any procedural due process claim, therefore, depends on whether the determination of guilt implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.* ¶ DDDD, Attachment D. The determination that Plaintiff was guilty of a Class II misconduct could not result in the denial of good time or disciplinary credits. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2

15

(6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a procedural due process claim arising from his Class II misconduct conviction.

### b. Substantive Due Process

Alternatively, the reported "bribe" might be considered a violation of Plaintiff's substantive due process rights. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

The Sixth Circuit has held that, under certain circumstances, framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*. In *Cale*, those circumstances included not only the planting of evidence, but also an accompanying motive to retaliate for the Plaintiff's participation in conduct protected by the First Amendment. The *Thaddeus-X en banc* opinion made clear that the "shocks the conscience" requirement of substantive due process analysis was not required to make out a First Amendment retaliation claim. It is not as clear

16

whether making a false misconduct allegation would "shock the conscience" in the absence of such a retaliatory motive.[4]

Whether or not framing a prisoner—by false testimony, planting evidence, or otherwise—shocks the conscience is immaterial because Plaintiff does not allege that he was framed or that Defendant Vanalstine's report regarding the outlet cover was false. Instead, Plaintiff complains that Vanalstine claimed he bought three lunches for Lieutenant Pynnonen to secure the result. As troubling as that claim might be, such petty bribery or corruption does not "shock the conscience."

The Sixth Circuit has considered the shock value of petty corruption in a couple of cases.

In *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012), the court reasoned:

> [T]he behavior against EJS in this case does not "shock the conscience." Perhaps it is unfortunate that the solicitation of a bribe by a public official does not shock our collective conscience the way that pumping a detainee's stomach does. But, although we can condemn McCloskey for his misconduct, we simply cannot say that his behavior is so shocking as to shake the foundations of this country. "While appellees' alleged conduct was reprehensible, it was not that type of conduct which so 'shocks the conscience' that it violates appellant's substantive due process rights. A citizen does not suffer a constitutional deprivation every time he is subject to the petty harassment of a state agent."

*EJS Properties*, 698 F.3d at 862 (citation omitted). Similarly, in *Hall v. Federal Bureau of Prisons*, No. 16-2394, 2017 WL 8776823, at *2 (6th Cir. Dec. 15, 2017), the court explained:

> To state a claim of a violation of substantive due process arising from an abuse of authority, Hall must have alleged conduct that "'shocks the conscience' or is an 'egregious abuse of governmental power.'" *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Thaddeus–X v. Blatter*, 175 F.3d 378, 387–88 (6th Cir. 1999) (*en banc*)). This conduct must be "so severe . . . and such an abuse of authority 'as to transcend the

---

[4] Although it is not clear whether a false misconduct is equally shocking in the absence of a retaliatory motive, the Sixth Circuit has concluded that subjecting a prisoner to a misconduct charge with false testimony is no less shocking than framing a prisoner by planting evidence. *Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004) (stating, in the context of evaluating a claim of qualified immunity, "the distinction between attempting to frame an inmate for a misconduct charge by planting evidence on his person and attempting to frame an inmate by giving false testimony is one without a difference").

17

bounds of ordinary tort law and establish a deprivation of constitutional rights.'"
*Parate v. Isibor*, 868 F.2d 821, 833 (6th Cir. 1989) (quoting *McClary v. O'Hare*,
786 F.2d 83, 88 (2d Cir. 1986)). This "does not entail a body of constitutional law
imposing liability whenever someone cloaked with state authority causes harm."
*Lewis*, 523 U.S. at 848. Froehly's non-coercive solicitation of a bribe in exchange
for illicitly exercising his authority on Hall's behalf does not meet this high bar . . . .

*Hall*, 2017 WL 8776826, at *2. In light of that authority, and particularly where Plaintiff does not

even claim the misconduct report allegations are false, the Court concludes that Plaintiff's

allegations do not suffice to state a claim for violation of his substantive due process rights.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court

determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an

appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that

Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should

Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to

§ 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma*

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 22, 2024                    /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE